RESCRIPT.
This is an action of trespass on the case against the town of Warwick for negligence in failing, as it is claimed, to keep the highway leading from East Greenwich to the village of Apponaug, at a point about a mile from the former and two miles from the latter place, safe and convenient for travelers with their teams, etc. The defect complained of is an alleged hole in the driveway, and, *Page 542 
as described in the original declaration, "said hole or cavity in said highway was of such a nature, and the condition of said highway was such that said hole or cavity could not be seen to be avoided by the plaintiff." The plaintiff offered evidence tending to show that the road in question was an ordinary country road made of gravel, that it had a hard crust on it, at least for the most part, but that the place complained of was several feet long and about a foot wide, where the crust was broken or worn through so that the alleged hole was a soft and powdery place, allowing a wheel to sink in, suddenly, several inches deep; different witnesses varying the depth from five or six inches to nearly double that depth. Plaintiff's witnesses did not altogether agree as to how perceptible the place was to the eye, one thinking that the unevenness or inequality of surface was several inches and plainly to be seen; but the majority testified that the so-called hole was a soft place not easily noticeable to the eye unless specially looked for, as the difference in level of surface was slight, if any, the chief difference consisting in the degree of hardness, the crust being hard and the cavity in the crust being filled with soft, powdery earth, which caused a jolt when a wagon-wheel went into it. None of the plaintiff's witnesses swore to a knowledge of this soft place earlier than 8 A.M. on August 31, 1896, the accident happening between 3 and 4 P.M. on that same day.
The defendant's witnesses — and there was an equal number, five on each side, that swore to the condition of the road — testified that they were over the road constantly, pretty much daily, some several times each day and some on the very day in question — among them the surveyor of highways, his son, being also his employee, an expressman, and others. They swore they saw no such place as described, and that any bad place fairly perceptible to the eye would have been seen by them; and especially it would seem this would have been so as to the surveyor of highways and his son, inasmuch as there were men engaged in repairing this very road at that very time, though not that particular place at that particular time. *Page 543 
The evidence shows that the plaintiff and two others were riding in an open wagon on a seat about three feet long, that the cushion on the seat came up to within a couple of inches of the top of the railing round the seat which kept the cushion on, that the railing flared outward, that the plaintiff was sitting on the nigh or left hand end of the seat, that the wagon, which was being drawn by two horses, was going at from six to seven miles an hour, and that when the front wheel struck the soft place it caused a jounce, or jolt, which threw the plaintiff off the seat onto the ground and broke one of his wrists.
Granting the plaintiff's contention that the alleged defect in the highway was of such character as, if the town had had notice of its existence, would have charged it with negligence (of which the court is not altogether free from doubt), yet this is one of the very class of cases where the reasonableness of the law requiring notice of the existence of the defect to make a town liable is conspicuously illustrated. The surveyor of highways, and his son, who was also his assistant, both of whom lived about a mile distant from the alleged defect, swear that they had no knowledge of any such place as the plaintiff charged existed, though they admit that they drove over the road nearly every day. There being no pretence of express notice having been given, the important inquiry is, was there implied notice, or might the town have had notice thereof, in the words of the statute, by the exercise of proper care and diligence on its part? Eight o'clock in the morning of the day of the accident is the earliest time sworn to by any witness of having seen the alleged defective place, and the man who then noticed it, not thinking of it in the afternoon on his return, and his attention being otherwise engaged, drove into it then, though he knew of its existence; so it could not have been very obvious to the mere passer-by unaware of its existence. As the accident took place between 3 and 4 P. M. any evidence of the existence of the, so-called, hole only covers eight hours; and the shortness of the time, the inconspicuousness to the eye of the alleged defect, and its position on a country road, all combined, force the court *Page 544 
to the conclusion that the plaintiff has failed to show by any preponderance of proof either that the town had notice of the alleged defect, or that it might have had notice thereof by the exercise of proper care and diligence on its part.
The decision of the court is that the defendant is entitled to judgment for its costs.
The plaintiff petitioned for a new trial on the grounds that the decision was erroneous, and that he had discovered new evidence.
OPINION.